IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 14-00173-DKW |
| | ) | |
| Plaintiff, | ) | Honolulu, Hawaii |
| | ) | December 7, 2016 |
| vs. | ) | 10:35 a.m. |
| | ) | |
| CHRISTOPHER LUM, | ) | CHANGE OF PLEA |
| | ) | |
| Defendant. | ) | |
| ______________________________ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DERRICK K. WATSON,
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government: THOMAS MUEHLECK, ESQ.
Assistant U.S. Attorney
District of Hawaii
Room 6100 - PJKK Federal Bldg.
300 Ala Moana Blvd.
Honolulu, Hawaii 96850

For the Defendant: SALINA ALTHOF, ESQ.
Assistant Federal Public Defender
Room 7104 - PJKK Federal Bldg.
300 Ala Moana Blvd.
Honolulu, Hawaii 96850

Official Court Reporter: GLORIA T. BEDIAMOL, RPR, RMR, FCRR
United States District Court
P.O. Box 50131
Honolulu, Hawaii 96850

Proceedings recorded by machine shorthand, transcript produced with computer-aided transcription (CAT).

Wednesday, December 7, 2016 10:35 a.m.

THE CLERK: Criminal Number 14-00173, United States of America versus Defendant (04) Christopher Lum. This case has been called for change of plea hearing.

Counsel, please make your appearances for the record.

MR. MUEHLECK: Tom Muehleck for the United States. Good morning, Your Honor.

THE COURT: Good morning, Mr. Muehleck.

MS. ALTHOF: Good morning, Your Honor. Salina Althof with Christopher Lum who is present.

THE COURT: Good morning to you as well as Mr. Lum.

All right. The defendant is here to plead guilty to Count 1 of the October 23rd -- it's been a while now -- 2014 second superseding indictment and that's without a plea agreement.

Mr. Lum, before accepting your plea, there are a number of questions that I need to ask you this morning to insure that your decisions are both knowing and voluntary. If at any time you don't understand any of the questions that I'm about to ask you, please let me know that and I'll do my best to clarify them for you; okay?

THE DEFENDANT: Okay, Your Honor.

THE COURT: Please swear the defendant in.

(The defendant was sworn to answer truthfully.)

THE COURT: Please understand, Mr. Lum, that you have

now taken an oath to answer the Court's questions this morning truthfully; and if you do anything other than that, you could be subjecting yourself to additional charges. Do you understand that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Please state your full name.

THE DEFENDANT: Christopher Harrison Lum.

THE COURT: How old are you?

THE DEFENDANT: I'm 30.

THE COURT: What's the highest level of education that you have achieved?

THE DEFENDANT: I'm a college graduate.

THE COURT: From a local university UH?

THE DEFENDANT: UH Manoa.

THE COURT: Okay. And who is your most recent employer?

THE DEFENDANT: Currently?

THE COURT: Yes.

THE DEFENDANT: Currently, I work for Hana Sushi which is a Kaiten restaurant in --

THE COURT: Hawaii Kai?

THE DEFENDANT: Hawaii, Kai, yes.

THE COURT: And you understand and speak English based on our limited interaction here this morning?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I assume you write English just fine being that you are a UH graduate?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Now, have you taken any type of drugs, legal or illegal, within the past 48 hours?
THE DEFENDANT: No, Your Honor.
THE COURT: Have you consumed any alcohol within the past 24 hours?
THE DEFENDANT: No, Your Honor.
THE COURT: Are you then thinking clearly and sober this morning?
THE DEFENDANT: Yes, Your Honor.
THE COURT: What is your understanding, Mr. Lum, of the purpose of this morning's hearing?
THE DEFENDANT: I'm going to plead guilty.
THE COURT: And have you had enough time to discuss that decision as well as this case generally with Ms. Althof?
THE DEFENDANT: Yes, Your Honor.
THE COURT: And are you satisfied with her representations of you thus far in this case?
THE DEFENDANT: She's been amazing, Your Honor.
MS. ALTHOF: That's my first amazing I've ever gotten by the way.
THE COURT: That does not surprise me. Ms. Althof, do you have any reason to doubt Mr. Lum's capacity or competence

to enter a knowing and informed plea here this morning?

MS. ALTHOF: No, Your Honor.

THE COURT: Mr. Lum, Count 1 of the second superseding indictment charges you, your codefendants, and others with conspiracy to distribute and to possess with the intent to distribute 50 grams or more of methamphetamine as well as five kilograms or more of a mixture or substance containing a detectable amount of cocaine in Hawaii between 2010 and 2014, and that would in violation of Title 21 of United States Code Sections 841(a)(1), Section 841(b)(1)(A), and Section 846. Is that the count that you intend to plead guilty to this morning?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And has anyone threatened, forced, or coerced you, Mr. Lum, into pleading guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone threatened, forced, or coerced anyone close to you, meaning a close friend or relative, in order to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone made any promises or assurances to you in order to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you pleading guilty this morning to Count 1 because you are guilty of that count?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Muehleck.

MR. MUEHLECK: Sir.

THE COURT: What is the potential penalties that Mr. Lum faces for pleading guilty to Count 1?

MR. MUEHLECK: Well, there is a maximum penalty of up to life imprisonment, Your Honor, there is a ten-year mandatory minimum term of imprisonment, there is a fine of up to $10 million, and a term of supervised release of at least five years and up to life, and a $100 special assessment, Your Honor.

THE COURT: Ms. Althof, do you agree with the potential penalties that your client faces for pleading guilty to Count 1 as just described by AUSA Muehleck?

MS. ALTHOF: Yes, I do, Your Honor.

THE COURT: Mr. Lum, do you, sir, understand the potential penalties you face for pleading guilty to Count 1 including the mandatory statutory minimum?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, by virtue of proceeding with your plea this morning you would be giving up what many consider to be important trial rights; I'm going to go over those with you now.

Mr. Lum, do you understand, sir, that under the constitution and laws of the United States you have the right not to plead guilty and to proceed to a trial by jury on the

charges that have been brought against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you were to proceed to trial you would be presumed innocent, which means that Mr. Muehleck and the United States would have the burden of proving your guilt to a jury beyond a reasonable doubt, and that at no time would you bear the burden of proving that you are not guilty?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you also understand, Mr. Lum, that in order to be found guilty at trial, a jury of 12 persons from this local community would have to find your guilt beyond a reasonable doubt and they would also have to do so unanimously?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you further understand that at all stages of the prosecution, which includes trial, you have the right to the assistance of counsel, as you do here this morning, and that if at any point you could not afford an attorney one would be appointed for you at no cost to you?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you understand that at trial you have the right to see and to hear all of the government's evidence and witnesses and to have those witnesses questioned by your own attorney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that at trial you could object to any of the evidence offered by the United States and you could present evidence on your own behalf in your case in chief, including through witness testimony that is compelled through the Court's subpoena power if that were necessary?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you also understand that at trial you have the right to testify on your own behalf, if you chose to do so; but if you chose not to, no inference or suggestion of your guilt could be drawn by the jury by the fact that you elected not to testify?

THE DEFENDANT: I understand, Your Honor.

THE COURT: All right. Do you understand that at trial the government would ordinarily have to prove the type of drug involved, in this case methamphetamine and cocaine, to a jury beyond a reasonable doubt as well as your knowledge as to the type of drug involved at the time of your offense; but by virtue of proceeding with your plea here this morning, you are giving up or waiving your right to require the government to make that showing of proof?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you understand that because a mandatory minimum sentence is applicable to Count 1, the government would have to prove not only the type of drug involved to a jury

beyond a reasonable doubt but it's weight and purity as well; and again, you would be waiving that right by virtue of proceeding with your plea?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you understand that by entering a plea of guilty, and if I were to accept that plea, you will have given up your right to a trial as well as to all of these trial rights that I've just described?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand, Mr. Lum, that if you were to proceed with your plea here this morning you will also need to waive or give up your right not to incriminate yourself? And the reason for that is I'm about to ask you a few questions about what you did that makes you guilty of Count 1 and those questions will need to be answered.

THE DEFENDANT: I understand, Your Honor.

THE COURT: Knowing these rights, sir, do you still wish to proceed with your plea?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I should have asked a minute ago, do you have any questions with regard to these rights that I've just outlined for you?

THE DEFENDANT: No questions, Your Honor.

THE COURT: Now, you're a United States citizen; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, the charge that you are prepared to plead guilty to is considered a felony offense. As a United States citizen then you need to understand that if your plea is accepted and you are adjudged guilty of Count 1, that adjudication by the Court could deprive you of what many consider to be valuable civil rights. Those civil rights include the right to vote, the right to hold public office, the right to sit on a jury, as well as the right to possess or bear a firearm. Do you understand that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: With regard to sentencing, United States law establishes detailed sentencing guidelines that apply to those who are convicted of -- which includes those who plead guilty to federal crimes. The sentencing judge must consider the sentencing guidelines and also must consider the sentencing factors that are set forth at Title 18 of the United States Code, Section 3553(a). The sentencing guidelines, however, are what the name implies. They are guidelines and they are advisory on this Court only. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you and Ms. Althof discussed how the federal sentencing guidelines might apply to your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, do you understand, Mr. Lum, that the

Court will not be able to determine precisely how the sentencing guidelines apply to your case until after a presentence investigation and investigation report have been prepared and completed --

THE DEFENDANT: Yes, Your Honor.

THE COURT: -- as well as after both your attorney as well as Mr. Muehleck for the United States have an opportunity to provide the Court with any comments on or objections to the contents of that report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand, sir, that after it has been determined how the sentencing guidelines apply to your case and the sentencing judge applies the guidelines, as well as the factors that I mentioned a minute ago, those that are contained at Section 3553(a) of Title 18, the sentencing judge may impose a sentence that is either more or less severe than what the sentencing guidelines call for?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if a sentence is imposed that is more severe than what you expect or more severe than what the sentencing guidelines call for, you will nonetheless be bound by your plea and will not be able to withdraw it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, do you also understand, Mr. Lum, that

despite any discussions you may have had with your counsel with counsel for the United States or with anyone else really with regard to what sentence you'll likely receive, with regard to the duration of the sentence that you might expect, with regard to any sentencing recommendations that they may wish to provide to the Court, I am not bound by those discussions, nor am I bound by any recommendations, and I could impose a sentence more severe than what you expect up to the maximum permitted by law? Do you understand that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Has anyone made any promises to you, Mr. Lum, with regard to what your sentence will be?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand that at the time of sentencing there is no limitation on the information that the Court can consider with regard to your background, your character, and your conduct except that the information the Court uses must be sufficiently reliable?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you understand that if a term of imprisonment is imposed as part of your sentence, a term of supervised release will follow; and if you were to violate any of the conditions of that supervised release, additional prison time could be imposed?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you also understand that parole has been abolished in the federal system?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And what that means then, in practical terms, is if a term of imprisonment is imposed as part of your sentence you will not be released early on parole.

THE DEFENDANT: I understand, Your Honor.

THE COURT: Do you also understand, Mr. Lum, that as part of your sentence, the Court could order you to pay a fine as well as a special assessment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, I need to be sure that you in fact committed the crime that you have been charged with Count 1 of the indictment.

The first step in that process is to turn to AUSA Muehleck to set forth the elements of Count 1.

MR. MUEHLECK: Your Honor, if the United States proceeded to trial, it would have to show that first that the defendant knowingly and intentionally entered into an agreement with persons -- other persons named in the indictment to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of isomers, and five kilograms or more of cocaine.

The defendant joined in this agreement knowing the purpose and intending to help accomplish that purpose; that is

the distribution or possession with the intent to distribute 50 grams or more of methamphetamine and five kilograms or more of cocaine.

THE COURT: Ms. Althof, do you have any disagreement with Mr. Muehleck's description of the elements of Count 1?

MS. ALTHOF: No, Your Honor.

THE COURT: Then I'll turn back to Mr. Muehleck to please set forth the evidence that the government would offer if this case were to proceed to trial.

MR. MUEHLECK: Your Honor, if the United States were to proceed to trial in this matter, it would show, through the credible testimony of agents and task force officers of the Drug Enforcement Administration and cooperating individuals, that during 2010 Mr. Lum was distributing kilogram quantities of cocaine and multiple-pound quantities of crystal methamphetamine weekly to his customers in Honolulu.

Mr. Lum received this cocaine and methamphetamine from his supplier, Mr. Aaron Dan. He was doing this for about six months, and sometime into 2011 Mr. Lum was no longer supplied by Mr. Dan. Mr. Lum owed Mr. Dan a good bit of money, Mr. Lum's customers had failed to pay him. One of the customers, a distributor of controlled substances, was arrested. So Mr. Lum agreed with Mr. Dan to assist Mr. Dan by distributing Mr. Dan's narcotics to his customers, carrying -- being a deliveryman for Mr. Dan and also being a courier of

Mr. Dan's drug proceeds, taking it to California in large quantities, 200,00 to $300,000 amounts, and distributing or providing that to California to Mr. Dan's source of supply of methamphetamine and cocaine.

And one of those sources of supply, the United States would show, is Kirisimasi Masuisui, a codefendant in this case. The United States would show that Mr. Lum met with Mr. Masuisui in California and delivered the money to Mr. Masuisui, and then met with Mr. Dan in Honolulu when the methamphetamine and cocaine were delivered. It was carried on occasion by codefendant Lawrence Mikaele. It was also Mr. Mikaele and Mr. Dan -- excuse me, Mr. Lum was aware was an employee of an airline at the San Francisco International Airport and would walk the controlled substances past the security checkpoint and enable it to be placed on an airplane and then flown to Hawaii.

Mr. Lum was available and was with Mr. Dan when Mr. Dan met with Mr. Masuisui and Mr. Mikaele at various hotels in Waikiki and in Honolulu, including the Ala Moana hotel. And at that point Mr. Dan would receive methamphetamine and cocaine in large quantities. Mr. Lum has seen Mr. Masuisui and Mr. Mikaele in possession of 15 kilograms of cocaine that was provided to Mr. Dan and over ten pounds of methamphetamine that was provided to Mr. Dan.

The United States would further show that the defendant was interviewed, not under arrest, not in custody on

November 27, 2013 by special agents of the DEA, and made admissions to the effect of assisting Mr. Dan and being involved with Mr. Masuisui and Mr. Mikaele in the distribution and possession with intent to distribute methamphetamine and cocaine in Hawaii.  Generally that would be the case if we went to trial, Your Honor.

THE COURT:  So from starting in 2011 the relationship then between Mr. Masuisui and Mikaele on one hand and Mr. Dan on the other, Masuisui and Mikaele were supplying Mr. Dan?

MR. MUEHLECK:  Yes, they supplied cocaine and methamphetamine to Mr. Dan.  And Mr. Mikaele was the person that would get it through the airline checkpoints and then Mr. Mikaele carried on occasion and on occasion Mr. Hobart Auelua, a codefendant, carried it on the airplane to Honolulu where it was provided to Mr. Dan.  There were meetings that the defendant saw between Mr. Dan, Mr. Masuisui and Mr. Mikaele in Honolulu where these large quantities of methamphetamine and cocaine were passed over to Mr. Dan who in turned distributed it.

THE COURT:  All right.

MR. MUEHLECK:  But both Masuisui and Mikaele had sources of supply in the California area which ended up supplying it to Mr. Dan in Hawaii, Your Honor.

THE COURT:  And when you say "supply," you're speaking of multiple-pound and multiple-kilogram quantities of both

cocaine and methamphetamine?

MR. MUEHLECK: Yes, Your Honor.

THE COURT: Mr. Lum, do you understand, sir, the evidence that the government would offer if this case were to proceed to trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree, sir, that what the government said you did is true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In your own words, Mr. Lum, please describe what you did that makes you guilty of Count 1.

THE DEFENDANT: I supplied and transported drug profits and narcotics into Hawaii from California and sold them all here.

THE COURT: And is it the case then that you had an agreement with at least Mr. Dan starting in 2010 to do exactly what you just said, distribute methamphetamine and cocaine in multiple-pound quantities; is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you would receive those narcotics from Mr. Dan, he was your provider and your supplier?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And so he would provide you with these narcotics in the quantities that we just mentioned for you to distribute further here in Hawaii?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you did in fact distribute it further here in Hawaii?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you would take the proceeds -- at least part of those proceeds would go back to Mr. Dan to pay for the narcotics that you had received?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And in 2011 approximately up to I think it's 2014 as charged in the indictment, you had a similar arrangement, you were working for Mr. Dan, is that -- maybe you could help me understand your relationship and role.

THE DEFENDANT: Okay. Pretty much Aaron -- Mr. Dan was our -- he had most of the money, and he would send the money up to Masuisui for the most part. Masuisui would purchase methamphetamine and cocaine, and he would put it onto the airplane, because Lawrence Mikaele worked for Southwest, he would leave it in the bathroom, or something to that extent, and whoever was the mule that time, whoever was bringing it over, transporting it, would then go into the designated bathroom and find the designated bag and carry it onto the plane. That was the later part of it.

THE COURT: So Mr. Dan was purchasing again pound and kilogram quantities of both cocaine and methamphetamine from Mr. Masuisui and Mr. Mikaele?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And what was your role? Other than observing this happening, what was your role?

THE DEFENDANT: I owed a lot of money, like he said, so I was trying to bring over -- I was flying over the money to give to Masuisui. And then we were trying to show that I wasn't running from him or that I didn't recognize that I owed a debt at the time.

THE COURT: I see. And when you say you owed money, you owed money to Mr. Dan from your past transactions with him?

THE DEFENDANT: Yes. Would you want me to go into more detail?

THE COURT: No, that's fine. So as a result in 2011 you started helping him out?

THE DEFENDANT: Yes, Your Honor.

THE COURT: To keep it simple, helping him out and what you would do is he would owe -- Mr. Dan would owe monies to Mr. Masuisui for the narcotics that Mr. Masuisui was selling to Mr. Dan and that you would transport the proceeds from the sales of these narcotics, methamphetamine and cocaine sales, here in Hawaii, you would take those monies from Hawaii back to California to pay Mr. Masuisui on behalf of Mr. Dan?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And now you also observed meetings -- I think Mr. Muehleck described it briefly, you were present at

meetings between Mr. Mikaele and Mr. Masuisui and Mr. Dan at which these drug transactions were consummated where Mr. Mikaele and Mr. Masuisui would actually bring over pound and kilogram quantities of methamphetamine and cocaine to give to or to sell to Mr. Dan, and you were there when that happened?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And at all times I gather you knew that the narcotics that you were transacting in back in 2010, when you were working directly with Mr. Dan, and then into 2011 and beyond, when Mr. Masuisui and Mr. Mikaele were involved, you knew at all times that these substances were in fact methamphetamine and cocaine?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Are both counsel satisfied then that a factual basis for Mr. Lum's plea of guilty to Count 1 has been established?

MR. MUEHLECK: Yes, Your Honor.

MS. ALTHOF: Yes, Your Honor.

THE COURT: Mr. Lum, I'll turn to you, sir. As to Count 1 of the second superseding indictment, how do you plead, sir: guilty or not guilty?

THE DEFENDANT: I plead guilty, Your Honor.

THE COURT: The Court finds that the defendant, Mr. Lum, understands the nature of this morning's proceedings

and is competent to enter a knowing and informed plea. The Court further finds that the defendant has entered a knowing, informed, and voluntary plea of guilty to Count 1 of the second superseding indictment without coercion, force, or threat.

The Court further finds that the defendant's plea of guilty to Count 1 is supported by an independent basis in fact containing each of the essential elements of Count 1 and that the defendant knowingly and voluntarily waives his trial and civil rights that he would have in the absence of pleading guilty.

Finally, the Court finds that in pleading guilty the defendant understands the factors that the Court will consider at the time of sentencing, including the potential penalties as well as the mandatory statutory minimum that applies to Count 1.

Mr. Lum, as you have acknowledged that you are in fact guilty, I accept your guilty plea and adjudge you guilty of Count 1 of the second superseding indictment. May we get a sentencing date please?

THE CLERK: March 22, 2017 at 9:30 before Judge Watson.

THE COURT: Is that date and time acceptable with both counsel?

MR. MUEHLECK: Yes, Your Honor.

MS. ALTHOF: Yes, Your Honor.

THE COURT: Where are we then with respect to Mr. Lum's pretrial release status?

MS. ALTHOF: I can start, Your Honor. This is a situation where it's never been a secret that Mr. Lum is working with the government. He's actually testified twice in two trials in San Francisco in a sort of related conspiracy. I think the first trial ended in a mistrial which was why he had to fly up again to testify.

So in this instance he is expected to testify against Mr. Masuisui and Mr. Mikaele next month. Mr. Masuisui is at FDC Honolulu, and as a practical matter, it really raises a host of problems when someone who is going to testify for the government is in custody with the person that they're going to testify against for several reasons. One, is that they're going to be transported likely in the same van to court, which is not an ideal situation. It can certainly invite things like witness tampering.

It's much easier of course if Mr. Lum is out for the government to debrief him and to prep him for his testimony and to meet with them whenever they want to meet with him. And there's frankly safety issues. FDC is a very small place. As I said, it's not a secret that Mr. Lum is working with the government, and so what would happen if there is some sort of safety issue for Mr. Lum in there, whether it's from Mr. Masuisui or any of his associates or any friends of his in

FDC, is that Mr. Lum is the one who would get punished and he would get put in solitary.

So there is a whole host of compelling factors why Mr. Lum should be able to remain at liberty, notwithstanding the fact that he has been out for over three years. It's over three years considering he got stopped I think in 2013, even before he came into the federal system. And he had been cooperating before he even had me as his attorney.

And obviously I'm sure the Court has reviewed Mr. Iverson's report. He is doing really well, he is gainfully employed, he's had a real change in thinking. And this is someone who was entrusted to fly to San Francisco twice on his own to testify with no issues.

THE COURT: All right. Mr. Muehleck, what's the government's position?

MR. MUEHLECK: Not much more I can say to that, Your Honor. I mean, he has testified twice without a plea agreement up there, he had a proffer agreement. He had an alcohol issue on one occasion, he's gotten that under control, he is working. My understanding, as the Court just heard, is that if called as a witness he will testify truthfully for the United States without a plea agreement. So I think there are a good basis for the Court finding exceptional circumstances and allowing Mr. Lum to stay out on bond.

THE COURT: All right. The Court notes that Mr. Lum

has been out formally at least on pretrial release status since April 11, 2014; so it's been at least two and a half years. And as Ms. Althof described, it's actually been a bit longer even than that. And during that lengthy period of time, there really have been almost no issues, save that one issue with being under the influence while operating a motor vehicle, or something like that, nothing that I thought was over the top or something that required revocation of your release status. That obviously didn't happen. I don't mean to minimize it; but in the scheme of the two and a half plus years that you've been out on release, that was a relatively minor blip on the radar.

You have maintained steady employment. As both counsel have mentioned you've cooperated with the United States. I note that you have also completed a program -- a substance abuse treatment program, and I think you're still engaged in outpatient treatment; is that right?

THE DEFENDANT: Yes, I voluntarily stayed.

THE COURT: And from what the pretrial release officer -- your supervising officer has said that you're doing very well in that program and that it continues to be helpful in getting your substance abuse issues under control and hopefully behind you.

For the reasons that I just mentioned, the Court makes the initial finding that you do not show any kind of flight risk, at least no evident flight risk to me, and certainly no

danger to the community. Now that is a necessary but not sufficient by itself finding to allow you to remain out pending sentencing.

In addition to the findings I just made, the Court also has to determine whether or not there are exceptional reasons to allow you out. And I think without repeating, because I don't think I can do an accurate job of repeating or paraphrasing even the description Ms. Althof provided of the potential impact and effect of having you under the same roof as Mr. Masuisui. It does appear to me that there are, in the factual circumstances presented here, exceptional reasons to allow you to remain out within the meaning of Section 3145.

The Court makes that finding as well and will allow you to remain out pending our next get-together. I'm not sure that will be our next get-together but at the sentencing hearing in March.

MR. MUEHLECK: I don't think so.

THE COURT: We may see one another before that, next month, I guess towards the end of January. But certainly I will remind you that all of your pretrial release conditions that you've been doing very well under up to this point remain in effect until your sentencing hearing on March 22nd of next year. And I remind you that any violation of those conditions that apply and that you've been doing well under, any type of violation however could have serious consequences and they

include the possibility of your immediate detention.

So please do what you've basically been doing for the last two and a half years and we won't have any issue. But I do want to remind you that that obligation remains up to March 22nd, and I know your counsel is going to tell you and going to emphasize to you the importance of you adhering to those conditions because she is going to want to come before me on March 22nd and say a lot of good things about you. And one of the things that I know she is going to want to say is that you've been performing great, not just in the two and a half years that we have been talking about now, but the additional three and a half months between now and March 22nd. So don't deprive her of that because I know that's what's she is going to want to do. Maybe we will see each other in January --

MR. MUEHLECK: January 17th, Your Honor. That's the trial date.

THE COURT: All right. Maybe we will see each other then. Have a happy holidays. Is there anything else we need to take up by either side?

MR. MUEHLECK: Not by the government.

MS. ALTHOF: Nothing further, Your Honor.

THE COURT: Have a nice holiday.

(Proceedings were concluded at 11:06 a.m.)

COURT REPORTER'S CERTIFICATE

I, Gloria T. Bediamol, Official Court Reporter, United States District Court, District of Hawaii, do hereby certify that pursuant to 28 U.S.C. §753 the foregoing is a complete, true, and correct transcript from the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

DATED at Honolulu, Hawaii, December 27, 2016.

/s/ Gloria T. Bediamol
GLORIA T. BEDIAMOL.
RMR, CRR, FCRR